UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUTRON ELECTRONICS CO., INC., *A PENNSYLVANIA CORPORTATION*, Plaintiff, | : : : : | |
| v. | : : | No.   5:23-cv-3318 |
| LEETRONICS CORPORATION, *A NEW YORK CORPORATION*, ELIRAN YADID, *A NATURAL PERSON*, & JOHN DOES 1-10, *INDIVIDUALLY OR AS CORPORATIONS/BUSINESS ENTITIES*, Defendants. | : : : : : | |

**O P I N I O N**
**Plaintiff's Motion for Default Judgment, ECF No. 9 – Granted**

**Joseph F. Leeson, Jr.**                                                                                             **March 26, 2024**
**United States District Judge**

## I.   INTRODUCTION

This case arises out of Defendants' purported sale of non-genuine goods bearing Plaintiff Lutron Electronics Co., Inc.'s (hereinafter "Lutron") registered trademarks.  Plaintiff filed an unopposed motion for default judgment against Defendants Leetronics Corporation (hereinafter "Leetronics") and Eliran Yadid (hereinafter "Yadid"). For the reasons set forth below, the Motion is granted.

## II.   BACKGROUND

The following facts are alleged in the Complaint.  Lutron is a Pennsylvania based company that markets and sells electronic lighting control products under several different word marks registered with the United States Patent and Trademark Office.  Compl., ECF No. 1, ¶¶ 1, 15, 18.  Yadid is the chief executive officer of Leetronics, a New York based company that operates an online Amazon storefront called "Fannys Gifts."  *Id.* ¶ 2, 4.

Lutron contracts authorized sellers to sell its products to consumers. *Id*. ¶ 16. These authorized sellers are required to follow Lutron's quality control procedures when handling, storing, and selling Lutron products. *Id*. ¶ 16, 17, 59. For instance, authorized sellers are required to, *inter alia*, store products in a particular way, to sell products in their original, unaltered packaging, and to inspect all Lutron products for damage, defects, alterations or evidence of tampering. *Id*. ¶ 60-63. Authorized sellers are prohibited from selling damaged or defective Lutron products and are required to remove any non-conforming products from their inventory and report any discovered defects directly to Lutron. *Id*. ¶ 60. Additionally, authorized sellers are prohibited from selling products to unauthorized sellers that intend to resell the products. *Id*. ¶ 56. Authorized sellers that operate online are subject to additional requirements, such as, *inter alia*, selling Lutron products only on websites owned and operated by the authorized seller, having a mechanism to process and catalogue customer feedback, sharing that feedback on Lutron products with Lutron, and not using third-party fulfillment services like Amazon. *Id*. ¶¶ 74-82. Lutron products sold by unauthorized sellers, which do not comply with all of the above quality control procedures, are not covered by Lutron's limited warranty agreement. *Id*. ¶¶ 88-92.

Leetronics, an unauthorized seller of Lutron products, has sold approximately 2,500 Lutron products using an online Amazon storefront. *Id*. ¶ 100. After sending multiple unanswered cease-and-desist letters, Lutron filed a Complaint on August 25, 2023, asserting trademark infringement, unfair trade practices under Pennsylvania law, common law tortious interference, and violations of federal and Pennsylvania unfair competition laws. *See* Compl. The Complaint and Summons were served on September 1, 2023. *See* ECF No. 6. Defendants have failed to answer or otherwise appear before the Court. On September 28, 2023, the Clerk

entered Default against Defendants for failure to plead or otherwise defend. *See* ECF No. 8. Thereafter, Lutron filed the instant Motion for Default Judgment against Defendants. *See* Mot., ECF No. 9.

## III.     LEGAL STANDARDS

### A.     Default Judgment – Standard of Review

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a properly served defendant when a default has been entered by the Clerk of Court. *See* Fed. R. Civ. P. 55(b)(2); *see also Anchorage Assocs. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). "It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984). The Court considers three factors in determining whether to enter default judgment: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000). In considering these factors, the "court should accept as true the well-pleaded factual allegations of the complaint, but the court need not accept the moving party's legal conclusions[.]" *Polidoro v. Saluti*, 675 F. App'x 189, 190 (3d Cir. 2017). Because "a party in default does not admit mere conclusions of law[,]" the district court must "ascertain whether 'the unchallenged facts constitute a legitimate cause of action,'" before granting default judgment. *Broad. Music, Inc. v. Spring Mt. Area Bavarian Resort, LTD*, 555 F. Supp. 2d 537, 541 (E.D. Pa. May 21, 2008) (citation omitted).

### B.   Trademark Infringement and Unfair Competition under the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)(1)(A) – Review of Applicable Law

To prevail on a trademark infringement or unfair competition claim under the Lanham Act, a plaintiff must prove that "(1) the mark is valid and legally protectable; (2) the mark is owned by the plaintiff; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services." *Fisons Horticulture, Inc. v. Vigoro Indus.*, 30 F.3d 466, 472 (3d Cir. 1994) (citing *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d Cir. 1991)).

### C.   Common Law Unfair Competition – Review of Applicable Law

"Pennsylvania courts have recognized a cause of action for the common law tort of unfair competition where there is evidence of, among other things, trademark, trade name, and patent rights infringement, misrepresentation, tortious interference with contract, improper inducement of another's employees, and unlawful use of confidential information." *Synthes (U.S.A.) v. Globus Med., Inc.*, No. 04-CV-1235, 2005 WL 2233441 at *8, 2005 U.S. Dist. LEXIS 19962 at *24-25 (E.D. Pa. Sep. 14, 2005).  When analyzing a common law unfair competition claim in the context of trademark law, courts treat this claim identically to a federal Lanham Act claim for unfair competition.  *See, e.g., Flynn v. Health Advocate, Inc.*, 169 F. App'x 99, 101 (3d Cir. 2006) ("[T]he analysis for the federal and common law trademark infringement and the unfair competition claims is virtually the same."); *R.J. Ants, Inc. v. Marinelli Enters., LLC*, 771 F. Supp. 2d 475, 489 (E.D. Pa. 2011) ("A Pennsylvania common law cause for unfair competition is identical to the Lanham Act, without the federal requirement of interstate commerce.").

### D.   Unfair Trade Practices – Review of Applicable Law

Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") provides a private cause of action for any "person who purchases or leases goods or services

primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal" due to a defendant's unfair or deceptive acts, as defined by the Act. 73 P.S. § 201-9.2(a). The overarching purpose of the Act is to protect consumers from unfair or deceptive business practices in commercial transactions. *Corsale v. Sperian Energy Corp.*, 374 F. Supp. 3d 445, 459 (W.D. Pa. 2019) (explaining that the Act was enacted "to even the bargaining power between consumers and sellers" (internal marks and citation omitted)). The Act prohibits, among other things, unfair or deceptive acts that include "fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4)(xxi). To establish a UTPCPL claim for a "deceptive" act, a plaintiff must allege "(1) a deceptive act [by the defendant], that is conduct that is likely to deceive a consumer acting reasonably under similar circumstances; (2) the plaintiff['s] justifiable reliance on that deceptive act; and (3) that the plaintiff's justifiable reliance resulted in ascertainable loss." *Corsale*, 374 F. Supp. 3d 445, 459. Because "[t]he Pennsylvania Supreme Court requires plaintiffs who seek to establish a claim under [the UTPCPL catchall] provision to prove the elements of common law fraud[,]" *DeHart v. HomEq Servicing Corp.*, 679 Fed. Appx. 184, 188 (3d Cir. 2017), a UTPCPL claim is subject to the same heightened pleading standard as a fraud claim. *See Butakis v. NVR, Inc.*, No. 22-2971, 2023 U.S. Dist. LEXIS 59712, at *17 (E.D. Pa. April 5, 2023) (citation omitted).

### E. Tortious Interference – Review of Applicable Law

Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or

intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct, and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.  *Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 212 (3d Cir. 2009) (citation omitted).

## IV.   DISCUSSION

The Chamberlain factors support entering default judgment against Defendants Leetronics and Yadid, whom this Court may appropriately exercise personal jurisdiction over,[1] on the trademark infringement, unfair competition, and tortious interference claims, all of which state legitimate causes of action.  However, the Complaint does not state a legitimate cause of action under the UTPCPL, and the unfair trade practice claim is dismissed *sua sponte* for lack of standing. Therefore, and as further explained below, the Motion for Default Judgment is granted, and Defendants Leetronics and Yadid are enjoined from the further sale of Lutron products.

### A.   Trademark Infringement and Unfair Competition Claims

Lutron has alleged sufficient facts to constitute a legitimate cause of action for trademark infringement and unfair competition under federal and Pennsylvania law.  As an initial matter, Lutron has shown that the marks at issue are valid, legally protectable, and owned by Lutron. Lutron has its trademarks registered with the USPTO, which is sufficient evidence to show they

---

[1] Although extensive discussion is not necessary in this case, the Court finds that Lutron has sufficiently pled facts regarding Defendants' purposeful sales and activities in and directed to Pennsylvania in order for this Court to exercise personal jurisdiction over Defendants.  Compl. ¶¶ 10-12, 101, 145-48 (alleging that Defendants have sold goods in Pennsylvania, specifically even selling goods directly to Lutron, which is located in Pennsylvania, as well as alleging that Defendants had knowledge that their goods were being shipped to and stored in Pennsylvania through Leetronics' online Amazon storefront and participation in the "Fulfillment by Amazon" service).

are valid as well as owned by Lutron. *See* 15 U.S.C. § 1115(b) ("[R]egistration shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce."). Therefore, the first two elements of Lutron's claims for trademark infringement and unfair competition are satisfied.

As to the third element, in cases such as this where the defendant is reselling products manufactured by the plaintiff and bearing the plaintiff's actual marks, a likelihood of consumer confusion may be demonstrated by showing that the products sold by the defendant are "materially different" from the plaintiff's genuine products. *See Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 303 (3d. Cir. 1998) ("When the products sold by the alleged infringer and the trademark owner contain identical marks but are materially different, consumers are likely to be confused about the quality and nature of the trademarked goods . . . In such circumstances, the alleged infringer's goods are considered 'non-genuine' and the sale of the goods constitutes infringement."). *See also Spectrum Brands v. Arrow Merchs. LLC*, No. 22-992, 2023 U.S. Dist. LEXIS 21792, at *8 (D.N.J. Feb. 7, 2023) (explaining that, while typically the resale of products is protected under the "first sale doctrine," the sale of *non-genuine* products is not a defense to trademark infringement) (citing *Iberia Foods Corp.*, 150 F.3d at 301-02). Some courts have found products to be materially different, and therefore non-genuine, if they do not meet the plaintiff's substantial, legitimate quality controls. *See, e.g., General Nutrition Inv. Co. v. Laurel Season, Inc.*, No. 20-691, 2020 U.S. Dist. LEXIS 154857, at *11 (W.D. Pa. Aug. 26, 2020) ("The trademark holder must demonstrate only that: (i) it has established legitimate, substantial, and nonpretextual quality control procedures, (ii) it abides by these procedures, and (iii) the non-conforming sales will diminish the value of the mark." (citation omitted)); *Spectrum Brands*,

032624

2023 U.S. Dist. LEXIS 21792, at *10-12 (holding that "material differences in Defendant's quality control, customer service, and warranty inclusion threaten to damage Plaintiff's goodwill with its customers. Such inferences are capable of sustaining a claim that Defendant's products are not 'genuine' because they are materially different from Plaintiff's Products").

Here, the third element for Lutron's trademark and unfair competition claims is also satisfied, because Lutron has adequately alleged that Defendants' use of the Lutron trademarks is likely to create consumer confusion due to the material differences from Lutron's genuine products and the products sold by Defendants. First, the Lutron products being sold by Leetronics through its Amazon storefront are not subject to Lutron's substantial quality control measures, which are designed to ensure that Lutron products received by consumers are high quality, non-defective, undamaged, and untampered with. Second, the Lutron products being sold by Leetronics are ineligible for Lutron's limited warranty agreement. The warranty is material to consumers, particularly in this case where the consumers are online Amazon shoppers unable to inspect the product before receipt, because consumers are more likely to purchase a product when they know they can receive a refund for an unsatisfactory product. These facts alleging material differences from genuine Lutron products suffice to demonstrate a likelihood of consumer confusion.

B.     **Tortious Interference Claim**

Lutron has also sufficiently pled a tortious interference claim against Defendants. Lutron has alleged the following facts: (1) Lutron has agreements with authorized sellers that prohibit these sellers from selling Lutron products to any non-authorized sellers that intend to re-sell the products; *see* Compl. ¶¶ 15-16, 55-58, 219-232, (2) Lutron sent several cease-and-desist letters to Defendants which informed Defendants of these agreements, and nevertheless, Defendants

continued to induce authorized sellers to sell them Lutron products, despite being on notice that this caused the agreements to be breached; *see* Compl. ¶¶ 97-99, 225-227, (3) Defendants acted without justification; *see* Compl. ¶¶ 138, 228, and (4) Lutron suffered damages and injury, including the loss of sales and damage to its reputation and existing business relationships, because of Defendants' conduct. *See* Compl. ¶¶ 230-231. These allegations constitute a legitimate cause of action for tortious interference.

    C.    **Unfair Trade Practices**

The unchallenged facts do not constitute a legitimate cause of action for unfair trade practices under the UTPCPL. The UTPCPL "is a remedial statute intended to protect consumers from unfair or deceptive practices or acts[.]" *Baldston v. Medtronic Sofamor Danek, Inc.*, 152 F. Supp. 2d 772, 776 (E.D. Pa. 2001) (citing *Commonwealth by Creamer v. Monumental Props., Inc.*, 329 A.2d 812, 816 (Pa. 1974)). Therefore, to bring a private action under the UTPCPL, the plaintiff must be a "person" who made a purchase for "primarily . . . personal, family, or household purposes." *Id.* (cleaned up) (holding that the plaintiff, a doctor running a medical practice, could not state a claim under the UTPCPL because the surgical screws purchased from the defendants were for his business, and not personal use) (citing *Valley Forge Towers S. Condo. Ass'n v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 645 (Pa. Super. 1990)); 73 Pa. Stat. Ann. § 201-9.2(a).

Here, Lutron is not pursuing this litigation on behalf of its customers, nor does Lutron allege that it purchased products from Leetronics for personal, family, or household purposes. Lutron initiated this lawsuit for itself, seeking injunctive relief for business-related losses sustained as a result of Defendants' infringing conduct. Lutron has not even alleged any facts to suggest that Lutron had any commercial dealings with Defendants, or that Lutron was misled

9
032624

into making a purchase from Leetronics because of misrepresentations made by Defendants.[2] Therefore, given that Lutron does not have standing to bring this claim, the Court dismisses the UTPCPL claim *sua sponte* for lack of jurisdiction. *See Mohanan v. Liberty Mut. Pers. Ins. Co.*, No. 22-2956, 2023 U.S. Dist. LEXIS 207191, at *7 (E.D. Pa. Nov. 20, 2023) ("The Court can raise challenges to standing *sua sponte*.").

### D.     *Chamberlain* Factors

Here, application of the three Chamberlain factors supports entry of default judgment against Defendants on the trademark, unfair competition, and tortious interference claims. First, denying the Motion would prejudice Lutron. Defendants' utter failure to respond to the Complaint in this case creates a potentially indefinite delay to Lutron's ability to litigate its claims, thereby establishing prejudice. *See Spring Valley Produce, Inc. v. Stea Bros.*, No. 15-193, 2015 WL 2365573, at *1 (E.D. Pa. May 18, 2015). *See also Grove v. Rizzi*, No. 04–2053, 2013 WL 943283, at *2 (E.D. Pa. March 12, 2013) (explaining that a plaintiff suffers prejudice when denial of default judgment would "impair the plaintiff's ability to effectively pursue his or her claim").

Second, Defendants do not appear to have a litigable defense. The Court may presume that an absent defendant who has failed to answer has no meritorious defense, because "[i]t is not the court's responsibility to research the law and construct the parties' arguments for

---

[2]     Although Lutron alleges that Lutron purchased an infringing product from Leetronics on Amazon, the factual averments in the Complaint suggest that Lutron at all times knew Leetronics was not an authorized seller and believed Leetronics to be selling infringing Lutron products prior to that purchase. Therefore, the facts regarding the purchase in the Complaint suggest that a purchase was made either to investigate this infringing conduct or to bolster Lutron's personal jurisdiction argument in preparation for this lawsuit, neither of which are purchases made primarily for personal, family, or household purposes. This transaction is not of the type contemplated by the UTPCPL.

them[.]" *Joe Hand Promotions, Inc. v. Yakubets,* 3 F. Supp. 3d 261, 271-72 (E.D. Pa. 2014) (quoting *Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008)).  Nonetheless, the Court has considered potentially applicable defenses to the trademark, unfair competition, and tortious interference claims herein and has not found any applicable defense to the facts at hand.

Third, Defendants' delay in this case is due to culpable conduct.  Despite receiving several cease-and-desist letters and advance notice of this lawsuit, including a draft of the complaint before this case was filed, Defendants have completely failed to respond, appear, or otherwise defend against any of Lutron's allegations.  Therefore, Defendants' "failure or refusal to engage in the litigation process and to offer no reason for this failure or refusal may qualify as culpable conduct with respect to the entry of a default judgment[.]" *Joe Hand*, 3 F. Supp. 3d at 272 (cleaned up) (citing *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009)). *See also Amerisourcebergen Drug Corp. v. Greenwall Pharm. Disc., Inc.*, No. 14-5812, 2016 U.S. Dist. LEXIS 172958, at *10 (E.D. Pa. Dec. 13, 2016) (holding that "[t]here is nothing in the record to indicate that [the defendants'] failure to act in this case is due to anything other than deliberate inaction, which should constitute culpable conduct and weigh in favor of a default judgment").

### E. Request for Injunctive Relief

A plaintiff seeking a permanent injunction must demonstrate: (1) that the moving party has shown actual success on the merits; (2) that denial of injunctive relief will result in irreparable harm to the moving party; (3) that granting the permanent injunction will result in even greater harm to the defendant; and (4) that the injunction serves the public interest. *See Shields v. Zuccarini*, 254 F.3d 476, 482 (3d Cir. 2001).

Here, first, Lutron has shown a likelihood of success on the merits because it has obtained a default judgment against Defendants for the reasons already given above. Second, Lutron has also shown that it will suffer irreparable harm without an injunction because it alleges that Defendants' sale of infringing products has interfered with its ability to exercise quality control over its products, caused consumers to receive poor-quality Lutron products, and has resulted in negative reviews of Lutron's products on Amazon, which hurt the goodwill of the brand. Compl. ¶¶ 41-49, 149-143. Any continued infringement by Defendants will result in further harm to Lutron's reputation among consumers, as well as further interference with Lutron's business relationships. Third, granting an injunction will not harm Defendants, as it will only prevent them from continuing to infringe on Lutron's trademarks. Lastly, protecting trademark owners' rights against infringement serves the public interest. *Cosmetic Warriors Ltd. v. Nailush LLC*, No. 17-1475, 2017 U.S. Dist. LEXIS 183886, at *19 (D.N.J. Nov. 6, 2017) (comparing the public interest in protecting copyright holders to the similar public interest in protecting trademark owners, holding that "the public has an interest in trademark protection so that the public interest will not be disserved by issuing a permanent injunction that protects a trademark from infringement") (citing *Apple Comput., Inc. v. Franklin Comput. Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright protections[.]")). Therefore, this Court finds that Lutron is entitled to permanent injunctive relief.

## V.   CONCLUSION

For the reasons discussed above, the Chamberlain factors support entering default judgment against Defendants Leetronics and Yadid on the trademark infringement, unfair

competition, and tortious interference claims, all of which state legitimate causes of action. However, the Complaint does not state a legitimate cause of action under the UTPCPL, and therefore the unfair trade practice claim is dismissed for lack of standing. Lutron's Motion for Default Judgment is granted, and Defendants are hereby enjoined from all future activity infringing on Lutron's trademarks.

      A separate Order follows.

                                      BY THE COURT:

                                      */s/ Joseph F. Leeson, Jr.*
                                      JOSEPH F. LEESON, JR.
                                      United States District Judge